OPINION JUDGMENT ENTRY
{¶ 1} Appellant, the State of Ohio, appeals the decision of the Court of Common Pleas, Stark County, which granted Defendant-Appellee William C. Walker's motion for a new trial following his conviction for robbery. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellee was indicted by the Stark County Grand Jury on one count of aggravated robbery on September 9, 2002. The bill of particulars alleged that on the night of March 20, 2002, appellee threatened to shoot a Dairy Mart clerk and thereupon took money and three cartons of cigarettes from the store. Appellee pled not guilty and obtained counsel. A jury trial was conducted on October 15, 2002
 {¶ 3} At trial, the State first called Terry Erb, the Dairy Mart store clerk. According to Erb, he was on duty on March 20, 2002, at about 9:30 P.M., when an African-American man with a goatee entered the store. The man, which Erb identified at trial as appellee, appeared to be on a "beer run," which Erb defined as the act of a person taking the product from a display area and just walking out the door without paying. Erb called the police, and a report was filed. In addition, a customer gave Erb the license number of a maroon automobile which the customer observed the man entering.
 {¶ 4} According to Erb, at about 11:30 P.M., appellee returned to the store. Erb recalled that appellee, who was wearing a sweatshirt and acting like he was armed, ordered him to open the cash drawer. Erb further testified that appellee also demanded some Newport cigarettes and threateningly asked why Erb had called police about the earlier "beer run." Erb notified the police again after the incident.
 {¶ 5} The State next called Canton Police Detective Don King. Detective King had investigated the events at Dairy Mart, and traced the license plate to a "William Walker." King prepared a photo lineup using appellee's BMV picture. About two months after the incidents of March 20, 2002, Erb picked appellee out of the photo lineup, testifying he was "very sure" the perpetrator was appellee.
 {¶ 6} After introducing the store security videotape and the photographic lineup documents, the State rested its case. Appellee chose neither to testify nor call any witnesses on his behalf. Furthermore, no notice of alibi was filed by appellee prior to or at trial. The jury was instructed on the elements of aggravated robbery and the lesser included offense of robbery. The jury thereupon returned a verdict of guilty to the crime of robbery. With appellee's consent, the matter proceeded directly to sentencing. During the court's colloquy, appellee stated the following.
 {¶ 7} "Uh, yeah. There is the chance that — the possibility that I was at the Crisis Center on the 20th. I didn't really have anyone look into that because I figured that with the tape that would be enough, but it was either the 19th or 20th I was at the Crisis Center. I would ask the Court to look — if we could check into that before sentencing." Tr. at 105.
 {¶ 8} Nonetheless, the court proceeded to sentence appellee to a term of three years in prison for robbery. On December 24, 2002, appellee filed a motion for new trial, alleging newly discovered evidence. Appellee therein alleged that he was at a residence on Rem Circle NE in Canton at the time of the robbery. Following an evidentiary hearing on February 3, 2003, the trial court granted the motion for new trial, journalizing its decision on April 9, 2003.
 {¶ 9} The State obtained leave to appeal from this Court, and herein raises the following sole Assignment of Error:
 {¶ 10} "I. The trial court abused its discretion and erred as a matter of law in granting appellee a new trial."
 I {¶ 11} In its sole Assignment of Error, the State argues the trial court abused its discretion in granting appellee a new trial. We agree.
 {¶ 12} The granting of a new trial lies in the trial court's sound discretion. State v. Swanson, Ashland App. No. 02COA048, 2003-Ohio-16, at ¶ 7, citing State v. Petro (1947),148 Ohio St. 505, 76 N.E.2d 370. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. See Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 13} Crim.R. 33 governs the granting of a new trial. In the case sub judice, appellant asserted "[t]he grounds for this motion are newly discovered evidence affecting materially Mr. Walker's substantial rights * * *." Crim.R. 33(A)(6) states in pertinent part as follows:
"(A) Grounds
 {¶ 14} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 15} "* * *
 {¶ 16} "(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *." {¶17} In Petro, supra, the Ohio Supreme Court held the following at the syllabus:
 {¶ 18} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." [Citation omitted.]
 {¶ 19} Appellee's motion for a new trial included a copy of a counselor's report from the Crisis Intervention Center of Stark County, purporting to show that appellee was at said facility from 9:15 P.M. until 9:30 P.M., unsuccessfully seeking a bed in the detoxification program. Also attached to the motion were a transportation voucher from a private transportation company dated March 20, 2002, and an affidavit from appellee's mother concerning appellee's whereabouts at the time of the Dairy Mart robbery.
 {¶ 20} During the evidentiary hearing on the motion, appellee presented witnesses to buttress the above documentation. A records custodian testified as to the aforementioned "nonadmit slip" from the Crisis Center. The records custodian also testified to the bill that the C D Transportation Company sent to the center for "William Walker" for a trip from that location to 2229 Rem Circle on March 20, 2002. Appellee also subpoenaed the owner of C D Transportation, who testified that appellee, along with another passenger, had been picked up by a company driver at 10:30 P.M. on March 20, 2002. The passenger, according to company documents, was taken to Aultman Hospital, while appellee was taken to the Rem Circle address. Finally, appellee's mother re-asserted the truth of her affidavit wherein she averred that appellee stayed at her apartment on Rem Circle from approximately 10:45 P.M. on March 20, 2002 until the following day.
 {¶ 21} Despite the presentation of such evidence, however, the record reveals appellee provided no substantiation that this information could not with due diligence have been discovered earlier. Indeed, appellee's trial counsel noted the following during cross-examination by the prosecutor at the motion hearing:
 {¶ 22} "Q. * * * And when you spoke with him the very first time, you were aware of the fact that he was saying that he had been at the Crisis Center and that he had called a cab and where he had been dropped off and that he wanted to say that he was at his mother's; is that correct?
 {¶ 23} "A. No. Wait a minute. Called a cab for both of us and dropped her, being the pregnant lady, at Aultman Hospital. Took me to my mom's house. Yes, that's correct, I did.
 {¶ 24} "Q. And you knew that the first time you talked to him?
 {¶ 25} "A. Yes.
 {¶ 26} "Q. Okay. And —
 {¶ 27} "A. Even before the first time I talked to him I knew that." Tr. at 25-26.
 {¶ 28} Moreover, the trial court, in analyzing whether the evidence was discovered after the trial, observed as follows: "This was evidence that was out there since day one. The day you make your statement, that evidence is known. That's the double-edged sword there, right?" Tr. at 64.
 {¶ 29} Therefore, although appellee's claims may warrant future post-conviction action, we find the trial court's decision in this matter to order a new trial, in the face of unequivocal verification in the record that the evidence was not "newly discovered", constituted an abuse of discretion. Accordingly, the State's sole Assignment of Error is sustained.
 {¶ 30} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed and vacated.
Wise, J. and Farmer, J., concur.
Hoffman, P.J., dissents.